DOMENIC J. DEROBBIO *vs.* CHARLES E. HART.

JANUARY 11, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This action of trespass on the case for negligence involves a collision between two automobiles, hereinafter referred to as cars, in the intersection of Princess avenue and Governor street in the city of Cranston, at about 9:45 a. m. on March 11, 1944. The jury returned a verdict for the plaintiff in the sum of $4200. Defendant's motion for a new trial was heard and granted. The case is before us on plaintiff's exception to the granting of that motion and also on defendant's exception to the denial of his motion for a directed verdict.

The evidence shows that Princess avenue, which is curbed, runs north and south and Governor street, which is uncurbed, runs east and west. The width of the traveled portion of both streets is about 24 feet. On the southwest corner of the intersection there is an open lot approximately 100 feet square, and on the southeast corner there is a house which is located at or near the property line of the streets.

The road and weather conditions were good. The temperature was between thirty-two and thirty-four degrees Fahrenheit. There were no parked or moving vehicles, other than the cars of the parties here, in the immediate vicinity

of the intersection at the time of the accident. The plaintiff, who lived some four houses south of the intersection on Princess avenue, was traveling north on that street; the defendant was traveling west on Governor street. Both parties were alone in their respective cars.

The plaintiff in substance testified that he left his home and drove towards the intersection at a speed of not more than fifteen miles an hour, as the motor of the car was cold; that as he came close to the intersection he further reduced his speed; that he first looked to his left, across the open lot at the southwest corner, and saw no traffic coming from that direction; that, when he was six or seven feet from the intersection, he looked to his right into Governor street and, on account of the house on the southeast corner, the farthest point that he could then see on the north side of that street was 75 feet from Princess avenue. He further testified that he then saw no traffic approaching the intersection from that direction; that he looked once more to his left as he entered the intersection and immediately thereafter he again looked to his right, at which time the motor of his car was about even with the center of the intersection; that he then saw defendant's car about 50 feet away from him on Governor street; that it was on its own right-hand side of the street but close to the middle line thereof; and that it was coming towards him at a speed of 40 or 45 miles an hour.

The plaintiff further testified that in this situation he "stepped on the gas" but the car "started bucking"; that the right rear fender and wheel of his car was struck a "terrific blow" by defendant's car when he, the plaintiff, was "Three-quarters across the Governor Street intersection"; that the force of the impact caused the back end of plaintiff's car to slew to the left "on the two left wheels" for about 15 feet; that it tipped over but then righted itself and, after moving forward for some distance, it turned around and came to a stop, facing south, on Princess avenue, some 45 or 50 feet north of the intersection.

The defendant's testimony was to the effect that he was traveling in a westerly direction on his own right side of Governor street but close to its center line, because of the soft shoulder on that uncurbed street, at a speed of 15 miles an hour; that, as the house at the southeast corner obstructed his view southerly on Princess avenue, he blew his horn when he was about 23 feet from the intersection; that he further reduced his speed as he approached the intersection; and that he saw the plaintiff's car. coming towards him "like a shot out of a gun", or at a speed of 35 miles an hour, just as he had passed the house on the southeast corner and he was about to enter the intersection; that he immediately applied the brakes and brought the car to a full stop, with its front end almost at the center of the intersection, when apparently the front bumper of plaintiff's car hit the front bumper of his car; that plaintiff's car then went into a "tail spin and the back of his car smashed my grille", the noise of the impact sounding like "the opening of an artillery barrage"; that plaintiff's car then slewed to its left, tipped over, righted itself and finally came to a stop on Princess avenue some distance north of the intersection.

There was testimony from other witnesses for the respective parties which we need not discuss in view of our conclusion in this case. The plaintiff's injuries and the amount of damages are not in dispute.

We will first consider defendant's exception to the denial of his motion for a directed verdict, under which he argues that the plaintiff was guilty of contributory negligence as a matter of law. In support of this position he strongly relies on *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co., Inc.,* 58 R. I. 451, and *Edwards* v. *Walker,* 71 R. I. 67.

Our decisions sustaining a direction of verdict in the *Dembicer* case and a nonsuit in the *Edwards* case are not controlling in the circumstances of the instant case. In the *Dembicer* case the evidence showed that, as the plain-

tiff was about to enter the intersection with his car, he saw another car on his left and a truck on his right, both approaching and close to the intersection. Immediately after the car from his left had passed in front of him and with the knowledge that he had seen a truck approaching and close to that intersection on his right, he left a place of safety, entered the intersection and continued to drive into the center thereof without looking again or paying any further attention to the truck until the time of collision.

In the *Edwards* case, the plaintiff's view at the corner in question was blocked by a tree and wild shrubbery, the latter, being about five feet high, having grown in and over the sidewalk toward the curb of the intersecting street. This condition and the danger to be reasonably apprehended were known to the plaintiff before she arrived at the intersection. It was also raining very hard at the time of the accident. As the plaintiff reached the corner, just at or in the intersection, she saw and realized that defendant's car was so close thereto and going so fast that a collision was bound to result if she proceeded across the middle line of the intersecting street into the path of defendant's car. Yet, notwithstanding her special knowledge and her appreciation of the danger to be reasonably apprehended, she continued to drive across the middle line of that street into the path of defendant's car and the collision occurred.

The factual differences between the instant case and the cases just mentioned are obvious. When the sharply conflicting and irreconcilable evidence here is viewed in accordance with the rules that apply in deciding a motion for a directed verdict, such evidence is reasonably open to different conclusions as to whether the plaintiff was in the exercise of due care in entering and proceeding across the intersection. Defendant's exception to the denial of his motion for a directed verdict is therefore overruled.

We shall now consider plaintiff's exception to the granting of defendant's motion for a new trial. The rules governing the consideration of a motion for a directed verdict and those

that apply in passing on a motion for a new trial are so different and have been so often stated by this court as to require no extended discussion here. In contrast with the duty that rests upon the trial justice in considering a motion for a directed verdict, a proper discharge of the duty imposed upon him in deciding a motion for a new trial requires him to pass his independent judgment upon the weight of the evidence and the credibility of the witnesses. It is also well settled that his decision on a motion for a new trial will not be disturbed by this court unless clearly wrong.

The plaintiff in this case seeks to avoid the force of the last-mentioned rule by contending that the trial justice misconceived or overlooked material evidence in favor of the plaintiff. To attain this end, he selects certain statements from the rescript of the trial justice, separates them from their context, and then argues for the conclusion which he urges in his contention. We cannot agree with the plaintiff on this point. When the rescript of the trial justice is read as a whole, it is clear to us that he did not misconceive or overlook any material evidence. The statements selected by the plaintiff as the basis for his contention are mere observations by the trial justice in evaluating the weight of evidence and, more particularly, the credibility of plaintiff's testimony, which led him to conclude that the plaintiff was "guilty of negligence contributing to the accident and that the verdict in this respect is contrary to the weight of the evidence". In these circumstances we cannot say that he was clearly wrong in granting defendant's motion for a new trial and therefore plaintiff's exception to such decision is overruled.

The exception of the plaintiff and that of the defendant are overruled and the case is remitted to the superior court for a new trial.

*Edward I. Friedman, James B. Linehan,* for plaintiff.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.